IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ENVIRONMENTAL DIMENSIONS, INC.,
A New Mexico Corporation,

       Plaintiff,

v.                                                        CIV 16-1056 WJ/JHR

ENERGYSOLUTIONS GOVERNMENT
GROUP, INC. (n/k/a Atkins Energy
Government Group, Inc.), a foreign for
profit corporation,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Compel Discovery Responses to Interrogatories Nos. 6, 8, and 11; Request for Admission No. 2; and Requests for Production Nos. 7 and 13 (*Doc. 38*), filed December 1, 2017. Having considered the parties' positions and all pertinent authority, the Court will grant the Motion.[1]

**I.    BACKGROUND**

As stated in Plaintiff's Complaint, Los Alamos National Security, LLC, ("LANS") contracted with Plaintiff to "manage, treat, and package radioactive waste" generated at the Los Alamos National Laboratory ("LANL"). *Doc. 1-1* at 4. Plaintiff, in turn, subcontracted with

---

[1] Defendant's Motion was filed on December 1, 2017. *Doc. 38*. Under this Court's local rules, Plaintiff's Response was due 14 calendar days later absent agreement of the parties and notice to the Court. *See* D.N.M.LR-Civ. 7.4. "The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). On December 27, 2017, Plaintiff filed a notice purporting to extend its deadline to respond to December 29, 2017. *Doc. 40*. However, on January 3, 2018, Defendant filed a counter-notice, objecting that it had only consented to an extension of December 21, 2017. *Doc. 42*. Defendant requests that the Court not consider Plaintiff's Response "in light of its untimeliness." *Doc. 44* at 2. However, the Court may waive the local rules to "avoid injustice." D.N.M.LR-Civ. 1.7. As the Court grants Defendant's Motion on the merits, it need not apply the local rules to grant Defendant's Motion as a matter of procedure. However, the Court hereby admonishes Plaintiff and warns it that failure to comply with this Court's rules in the future could lead to more severe sanctions.

Defendant to "provide expert waste management personnel experienced in the LANS TRU Waste Program and knowledgeable of specific processes and procedures." *Id.* Plaintiff contends that Defendant breached the subcontract by billing for services in excess of 35% of the work performed under Plaintiff's contract with LANS. *Id.* at 6. Plaintiff further alleges that Defendant has engaged in civil fraud, unfair trade practices, and tortious damage to its reputation and contract with LANS, ultimately resulting in "LANS eliminate[ing] the tasks that would have been otherwise assigned to Plaintiff … as a result of Defendant['s] conduct[.]" *Id.* at 12. Defendant admits that it contracted with Plaintiff but generally denies Plaintiff's claims. *See Doc. 16* at 1-10. Defendant further brings counterclaims against Plaintiff for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel/detrimental reliance, unjust enrichment, and open account/account stated. *Id.* at 10-17.

Defendant served its first set of discovery requests upon Plaintiff on December 28, 2016, including 13 interrogatories, 5 requests for admission, and 17 requests for production. *Doc. 38* at 2; *Doc. 26* (Certificate of Service). Plaintiff's responses were due on January 27, 2017. *Doc. 38* at 2; *see* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), 36(a)(3). However, on that date, Plaintiff emailed Defendant a letter enclosing only its responses to Defendant's requests for admissions. *Doc. 27* (Certificate of Service); *Doc. 38* at 2; *Doc. 38-1*; *Doc. 38-2*; *Doc. 38-3*. The letter further referenced a thumb drive containing unspecified documents. *Doc. 38-2*. Plaintiff stated that its responses to Defendant's interrogatories and requests for production would be "forthcoming." *Id.* "The reference thumb drive arrived; however, it did not contain any documents." *Doc. 38* at 2.

On February 3, 2017, Defendant emailed Plaintiff in an attempt to meet and confer about Plaintiff's deficient discovery responses. *Doc. 38* at 2-3; *Doc. 38-4*. Plaintiff responded on February 10, 2017, apologizing for the blank thumb drive, and committing to get the balance of

2

the owed discovery in the mail by close of business on February 15, 2017. *Doc. 38* at 3; *Doc. 38-5*. Plaintiff's Certificate of Service for its responses indicate that it finally sent them on February 16, 2017. *Doc. 29*.

On August 24, 2017, Defendant sent Plaintiff another meet and confer letter, this time raising specific "deficiencies" it identified in Plaintiff's responses to interrogatory numbers 1, 2, 3, 6, 8 and 11, requests for production numbers 3, 7, 9 and 13, and request for admission number 2. *Doc. 38* at 4; *Doc. 38-7*. Plaintiff responded on August 28, 2017, promising to review its responses in light of Defendant's comments. *Doc. 38* at 4; *Doc. 38-8*. On September 12, 2017, Plaintiff's counsel emailed Defendant stating that his client "has given me a diskette with a large number of files on it. Those are materials and emails from the LANL office of [Plaintiff] and some computer hard drives that were not originally scanned in the document production by the accounting department person that originally downloaded all the documents responding to the RFP you sent." *Doc. 38-10*. Plaintiff further stated that the referenced diskette "should arrive shortly." *Id.* Plaintiff provided additional documents responsive to Defendant's requests for production on September 20, 2017. *Doc. 38* at 5.

On October 13, 2017, Defendant again wrote to Plaintiff, seeking supplemental responses to its discovery requests. *Doc. 38* at 5; *Doc. 38-11*. Plaintiff responded on October 20, 2017, indicating that it had mailed another thumb drive with "extensive discovery updates from computer hard drive inspections of other employees' hard drives[.]" *Doc. 38* at 5; *Doc. 38-12*. Plaintiff also included revised discovery answers. *Id.* However, on November 6, 2017, Defendant emailed Plaintiff, stating that it had not received the referenced thumb drive. *Doc. 38-13* at 2. Plaintiff responded on November 7, 2017, indicating that the thumb drive had been returned for postage due. *Doc. 38-13* at 1. Plaintiff resent the thumb drive. However, when it was received by

Defendant it was incomplete, containing only supplemental responses to interrogatories 1, 2 and 3, and so Plaintiff had to resend it. *Doc. 38-13* at 1; *Doc. 38-14*. Then, on November 15, 2017, during a deposition, counsel for Plaintiff indicated that there were additional hard copy documents that had not been produced. *Doc. 38-15*. Finally, on November 17, 2017, Defendant received a diskette "which did not provide any new documents, and instead contained all previously produced documents, including those with identical Bates numbering." *Doc. 38* at 7.

Defendant now moves the Court, "urg[ing]" it to compel Plaintiff to supplement its responses to interrogatory numbers 6, 8 and 11, requests for production numbers 7 and 13, and request for admission number 2. *See Doc. 38* at 8-11. Defendant complains that it had to take two depositions of Plaintiff's former employees, Chris Edgmon (former project manager) and John Rodell (former COO), without complete discovery. *See id.* at 8. Defendant seeks sanctions in the form of "disallowance of various claims or defenses to counterclaims or attorney's fees." *Id.* at 11.

"Plaintiff admits that [it] had difficulties with the initial production of documents[.]" *Doc. 41* at 1. However, it contends that its "subsequent efforts at numbering and providing documents to Defendant were successful and continue to be used." *Id.* Plaintiff further explains that it "was forced to lay off all of its employees and has only the Vice President of the company, Mr. Bradshaw as a knowledgeable person capable of searching, finding, and providing documents under the discovery requests of the Defendant." *Id.* Plaintiff also offers excuses for its delays, including mistakes committed by its counsel in copying and mailing its various responses. *Id.* at 2. Plaintiff argues that "Defendant misconstrues its statement that employee hard drives were searched later," explaining that these subsequent searches were "confirmatory" and "conducted to make sure that the initial search of the Company correspondence files were

4

properly numbered and turned over." *Id.* Plaintiff explains that its initial responses to discovery were complete, and that the supplemental materials were drafts corresponding to final versions of letters that were already sent. *Id.* at 3. Plaintiff also explains that some of the supplemental discovery was "irrelevant to this litigation," sent "[o]ut of an abundance of caution[.]" *Id.* And, Plaintiff states that it expanded its answers to the interrogatories noted in Defendant's Motion to Compel, but that its "responses have not changed." *Id.* at 4. Accordingly, Plaintiff asks the Court to deny Defendant's Motion.

In its Reply, Defendant attaches Plaintiff's "Supplemental Discovery Response [Defendant's] Motion to Compel." *See Doc. 44-1*. In this document, Plaintiff provides supplemental responses to all of the discovery requests at issue. *See id.* Defendant appears to accept these responses for the most part, alleging only that Plaintiff's "expanded" answer to request for admission number 2 is deficient. *Doc. 44* at 2. However, Defendant "has reason to believe" that Plaintiff's discovery responses continue to be incomplete. *Doc. 44* at 4. It further contends that Plaintiff failed to produce "key documents" until after the present Motion was filed. *Doc. 44* at 6. These documents appear to be the same that Plaintiff contended were irrelevant. *See id.*; *Doc. 44-1*. To the contrary, Defendant argues, these documents "are directly responsive to [its] requests for production." *Doc. 44* at 6. Defendant concludes by reiterating its request for sanctions, further explaining that it may need to reopen the depositions of Messrs. Rodell and Edgmon, and requesting fees and costs associated therewith. *Doc. 44* at 10.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery, providing that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

5

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Parties may issue interrogatories pursuant to Federal Rule of Civil Procedure 33, which "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). A responding party may object to an interrogatory; however, the grounds for an objection "must be stated with specificity." Fed. R. Civ. P. 33(b)(4). A party may move to compel the answer to an interrogatory under Rule 33 if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iii).

Parties may issue requests for production pursuant to Federal Rule of Civil Procedure 34 "within the scope of Rule 26(b)[.]" Fed. R. Civ. P. 34(a). Each request must be responded to or addressed by specific objection. Fed. R. Civ. P. 34(b)(2). A party may move to compel a response to a request for production if good faith attempts to secure the answer are unsuccessful. Fed. R. Civ. P. 37(a)(3)(B)(iv).

Parties may issue requests for admission under Federal Rule of Civil Procedure 36 directed at "any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4). "The requesting party may move to determine the sufficiency of

an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an answer be served. . . . Rule 37(a)(5) applies to an award of expenses." Fed. R. Civ. P. 36(a)(6).

Parties are under a continuing duty to supplement responses to discovery "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been known to the other party during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). The failure to supplement a discovery response may result in sanctions "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

"If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if . . . (ii) the opposing party's nondisclosure, response or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied, the Court may, similarly, assess costs and fees against the movant. Fed. R. Civ. P. 37(a)(5)(B). If the motion is granted in part and denied in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

## III. ANALYSIS

The Court has reviewed Plaintiff's original responses to Defendant's discovery requests, as well as the supplemental document Plaintiff produced after Defendant's Motion was filed.[2] Having considered these documents in light of the Federal Rules, described above, the Court makes the following findings:

### A) Interrogatories

Defendant's sixth interrogatory asked Plaintiff to "[i]dentify and describe in detail . . . all communications [Plaintiff] had with LANS or LANL regarding the termination or suspension of Task Order No. 1 or any other task orders under MTOA2." *Doc. 38-6* at 2. The interrogatory asked Plaintiff to identify "any related documents by bates number." *Id.* Plaintiff did not object to this interrogatory, but responded by stating that it "was told verbally on May 23, 2015 that its performance was excellent by LANS management. . . . [And] [o]n or about May 27, 2015, four day (sic) after Mr. Bradshaw was specifically told that [Plaintiff] was doing a great job on the packaging line, the contract manager for MTOA2 sent a termination of task order Notice date May 27, 2015." *Doc. 38-6* at 2-3. After Defendant's Motion was filed, Plaintiff supplemented this answer to communicate that "[i]t is Mr. Bradshaw's ([Plaintiff's] Vice President) understanding that the verbal communication on May 23, 2015 was between John Rodell ([Plaintiff's] Program Director) and Michael Waver (LANS Subcontract Specialist)." *Doc. 44-1* at 1. Plaintiff further identified, by Bates number, "[t]he correspondence regarding Task Order (TO) termination" and eleven other documents which appear to have been previously provided to Defendant. *Id.* at 1-2. In other words, Plaintiff only supplemented and fully answered Defendant's sixth interrogatory *after* Defendant filed the instant Motion.

---

[2] The Court will not repeat the questions and responses verbatim, but has paraphrased and quoted the relevant material.

Defendant's eighth interrogatory asked Plaintiff to "[i]dentify and describe in detail, including specifically identifying any related documents by Bates number, [Plaintiff's] process and persons responsible for assigning and delegating work for the MTOA2 and Task Order No.1. . . ." *Doc. 38-6* at 4. Plaintiff did not object, but responded by stating that it "managed it (sic) MTOA2 contract from both the main office in Albuquerque and the [Plaintiff's] office at LANL. Michael Bradshaw was ultimately responsible for the management of MTOA2 and both he and John Rodell made known to [Defendant's] manager and LANL that the performance of [Defendant] on the MTOA2 subcontract was beyond the scope of said subcontract because it was not limited to the 35 percent of work anticipated and demanded in writing and verbally by [Plaintiff's] management to [Defendant]. . . ." *Id.* After Defendant filed the instant Motion, Plaintiff supplemented its response by stating, in detail, its "process for assigning and delegating work." *See Doc. 44-1* at 2-3. Thus, as with Interrogatory 6, Plaintiff only supplemented and fully answered Defendant's eighth interrogatory after Defendant filed the instant Motion.

Defendant's eleventh interrogatory asked Plaintiff to "[i]dentify and describe in detail, including specifically identifying any related documents by Bates number, each invoice [Plaintiff] has supplied to LANS under the MTOA2 and whether or not each individual invoice submitted to LANS has been paid in full or in part." *Doc. 38-6* at 6. Plaintiff did not object, but responded that "[a]ll invoices have been paid. For references to documents directly related to this Answer, see Interrogatory Supplement 1 attached hereto." *Id.* After Defendant filed the instant Motion, Plaintiff supplemented this answer by identifying, by Bates number, 15 invoices. *Doc. 44-1* at 3-4. Thus, as with Interrogatories 6 and 8, Plaintiff only supplemented and fully answered Defendant's eleventh interrogatory after Defendant filed the instant Motion.

9

In sum, Plaintiff only adequately responded to the three interrogatories at issue after Defendant was forced to file its Motion to Compel. Thus, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), "the court must, after giving an opportunity to be heard," order the payment of Defendant's reasonable costs and attorney's fees incurred in making the motion as to the interrogatories.

### B) Requests for Production

Defendant's seventh and thirteenth requests for production asked Plaintiff to produce "the Department of Energy Accident Investigation Report dated April 16, 2015, as referenced in paragraph 29 of [Plaintiff's] Complaint," as well as all documents "relating to this report or its contents" (number 7), and "all communications between [Plaintiff] and [Defendant] regarding the Teaming Agreement, MTOA2, Subcontract Agreement, Task Order No. 1, and any work performed thereunder, and/or this Litigation" (number 13). *Doc. 38-6* at 7-8. Plaintiff did not object, but responded to both of these requests for production by stating that "[t]o the extent such documents exist see attached Reports and documents contained on thumb drive." *Id.* However, after Defendant filed its Motion, Plaintiff supplemented its response to request for production 7 by stating that it "has no documents or communications with DOE or LANS or [Defendant] or any third parties regarding the AIB report. [Plaintiff] was not involved in the events leading up to the requirement for an AIB investigation nor provided or was asked to provide any input to the AIB report." *Doc. 44-1* at 5. Moreover, Plaintiff supplemented its response to request for production 13 by providing a detailed explanation for its failure to provide documents in the first place. *See id.*

In sum, Plaintiff only properly responded to Defendant's requests for production after the instant motion was filed. Thus, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), "the

court must, after giving an opportunity to be heard" order the payment of Defendant's reasonable costs and attorney's fees incurred in making the motion as to the requests for production.

### C) Request for Admission

Unlike Plaintiff's answers and responses to Defendants interrogatories and requests for production, which, while tardy, have satisfied Defendant, Defendant continues to complain that Plaintiff's response to request for admission number 2 is deficient. *Doc. 44* at 2. The request is a straightforward one, seeking an admission that "[Defendant] performed the services billed to [Plaintiff] in the following invoice numbers: 41537, 40007, 40012, 40760, and 42117." *Doc. 38-3* at 2. However, plaintiff did not admit or deny the request. Instead, it "admit[ted] to the extent that the documents speak for themselves. The document (sic) also show that [Defendant] performed work in excess of the 35 percent limitation and the demands by [Plaintiff] to [Defendant] that they limit their work on the MTOA2 contract to 35 percent." *Id.* The Court finds that this initial response did not comply with Federal Rule of Civil Procedure 36(a)(4) by specifically admitting or denying the request. Moreover, Plaintiff's supplement to the request, which expands upon its reasons for failing to specifically admit or deny the request, again fails to conform to the Rule. *See Doc. 44-1* at 4-5.

As such, the Court will deem admitted Defendant's second request for admission. *See* Fed. R. Civ. P. 36(a)(6). Additionally, because the Court is granting the Motion as to this request, pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), "the court must, after giving an opportunity to be heard" order the payment of Defendant's reasonable costs and attorney's fees incurred in making the motion as to the request. *See* Fed. R. Civ. P. 36(a)(6).

11

## IV. CONCLUSION

In sum, the Court finds Defendant's Motion (*Doc. 38*) is well-taken and should be granted because Plaintiff failed to fully answer and respond to Defendant's interrogatories and requests for production until after the present motion was filed, and because Plaintiff's answer to Defendant's request for admission number 2 remains deficient. As such, the Court hereby orders:

1. Defendant's request for admission number 2 is deemed admitted.

2. Within 14 days of the entry of this order, Defendant shall file a motion seeking its costs and fees associated with the filing of its Motion (*Doc. 38*) and attaching thereto an affidavit from counsel explaining why the costs and fees sought were reasonably incurred in making the motion. Plaintiff shall respond to Defendant's request for costs and fees within 14 days thereafter and should explain either why the requested costs and fees were not reasonably expended or why the imposition of sanctions would be unjust. Defendant may file a reply as contemplated by this Court's local rules.

3. Because the Court has already extended the discovery deadline by seven months, *see Doc. 48*, Defendant's request for additional costs and fees associated with follow-up depositions of Messrs. Rodell and Edgmon is hereby denied.

IT IS SO ORDERED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE