IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ENVIRONMENTAL DIMENSIONS, INC.,
A New Mexico Corporation,

       Plaintiff,

v.                                                                            CIV 16-1056 WJ/JHR

ENERGYSOLUTIONS GOVERNMENT
GROUP, INC. (n/k/a Atkins Energy
Government Group, Inc.), a foreign for
profit corporation,

       Defendant.

# **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Atkin Energy's Motion for Attorneys' Fees Associated with Filing Motion to Compel (*Doc. 57*), filed March 15, 2018. Having considered the parties' positions and all pertinent authority, the Court will grant the Motion in part.

    I.        BACKGROUND

Defendant filed its Motion to Compel Discovery Responses to Interrogatories Nos. 6, 8, and 11; Request for Admission No. 2; and Requests for Production Nos. 7 and 13 on December 1, 2017. *See Doc. 38*. After recounting the lengthy meet and confer process the parties engaged in, the Court granted the Motion to Compel in full, finding that "Plaintiff only adequately responded to the three interrogatories at issue after Defendant was forced to file its Motion to Compel. . . . Plaintiff only properly responded to responded to Defendant's requests for production after the instant Motion was filed. . . . [And] the Court will deem admitted Defendant's second request for admission." *Doc. 50* at 10-11. Having granted the Motion in full,

the Court was compelled by Federal Rule of Civil Procedure 37(a)(5)(A) "after giving an opportunity to be heard," to order the payment of Defendant's "reasonable expenses incurred in making the motion, including attorney's fees." *See id.* As such, the Court invited Defendant to file a motion seeking its costs and fees associated with the filing of the Motion to Compel. The Court further invited Plaintiff to respond, directing it to explain "why the requested costs and fees were not reasonably expended or why the imposition of sanctions would be unjust." *Doc. 50* at 12.

Defendant filed its Motion for Fees as required. *Doc. 57.* Attached to the Motion is an affidavit requesting that Plaintiff pay $12,144.50 in attorney's fees associated with the Motion to Compel. *Doc. 57-1.* The affidavit does not specifically break down the tasks that were spent preparing the Motion to Compel; rather, Defendant's counsel (Mr. Barnett) avers that

> [t]he time spent by my firm, Holland & Hart LLP, and me to bring [Defendant's] Motion to Compel Discovery Responses from [Plaintiff], includes, among other tasks: (a) evaluating deficiencies in [Plaintiff's] discovery responses; (b) conferring with local counsel regarding New Mexico local rules; (c) drafting and revising Motion to Compel; (d) reviewing and evaluating supplemental responses from [Plaintiff] produced in response to Motion to Compel; (e) address concerns regarding [Plaintiff]'s erroneous extension of time to file opposition; (f) reviewing and evaluating [Plaintiff]'s opposition brief; (g) drafting and revising reply brief in support of Motion to Compel; (h) review communications with opposing counsel as support for Motion to Compel; and (i) prepare exhibits for Motion to Compel[.]

*Doc. 57-1* at 2. The affidavit then requests fees for four separate attorneys: James Barnett (14.8 hours), Elizabeth Rudolf (21.9 hours), Robert Sutphin (0.4 hours), and Julia Broggi (1.3 hours), at rates ranging from $230/hour to $450/hour.

As Defendant recognizes in its Reply brief, Plaintiff's Response does not challenge the amount of fees requested. *See generally Doc. 62*; *Doc. 68* at 1. Rather, Plaintiff takes the position that Defendant's request for fees should be taken in context with "its abject refusal to provide

2

any discovery on Plaintiff's Complaint allegations and only providing such discovery that covers and pertains to Defendant's counterclaim." *Doc. 62* at 2. Plaintiff further argues that Defendant has "persisted in engaging in length (sic) written communications when the simple answers to Plaintiff's (sic) requests are available by phone call." *Id.* at 3. Plaintiff then shifts gears, stating that "the organic basis for any omission or delay in discovery responses by Plaintiff to Defendant is more grounded in personal issues which Plaintiff has only recently shared with his counsel." *Id.* at 5. Plaintiff explains in an affidavit that its sole remaining employee (Mr. Bradshaw) suffered major medical issues during the summer and fall of 2017 and that his illness "reasonably impacted the discovery efforts of Plaintiff in the case." *Doc. 62* at 5-6; *see generally Doc. 62-1*. Nonetheless, Mr. Bradshaw acknowledges that he did not inform Plaintiff's counsel of his medical issues until February 2018, and that he "is fully aware of his obligation to move the case forward[.]" *Doc. 62-1* at 1, 2.

As to Plaintiff's arguments about the "context" of the instant discovery dispute, Defendant responds that "[t]his is not the proper forum for [Plaintiff] to make such allegations," given that Plaintiff's contentions are currently being litigated in a separate set of motions currently pending before the Court. *Doc. 68* at 2. Regarding Plaintiff's contention that relief was a mere phone call away, Defendant replies that its actions were necessary to "illustrate for the Court [Plaintiff]'s dilatory non-compliance with its discovery obligations" and were otherwise proper because it waited nearly a year after its discovery requests were served to file its Motion to Compel. *Id.* at 2-3. Moreover, Defendant argues that the Court's imposition of sanctions is not unjust in these circumstances and that the absence of Mr. Bradshaw does not justify Plaintiff's failure to respond to discovery. *Id.* at 3-6. Most basically, Defendant argues that had Plaintiff disclosed Mr. Bradshaw's illness prior to the instant briefing, it "could have made

3

accommodations as necessary and appropriate." *Id.* at 7. More to the point, Defendant argues that Mr. Bradshaw's illness does not explain Plaintiff's failures, given that it served its requests in December 2016, and its first meet and confer letter in February 2017, "both long before the onset of Bradshaw's illness." *Id.* Finally, Defendant argues that "Bradshaw's illness does not explain the repeated technological errors, including three incorrect thumb drives, and postage mishaps that further delayed [Defendant] receiving its requested discovery." *Id.*

## II.  LEGAL STANDARDS

"The rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 680 (10th Cir. 2012) (quoting 1970 committee notes to Rule 37(a)(4)). As a consequence, Federal Rule of Civil Procedure 37 contains provisions that "allow, and often require" the Court to award attorney fees for discovery misconduct. *Id.* at 678. Under Rule 37(a)(5)(A),

> [i]f the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if . . . (ii) the opposing party's nondisclosure, response or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added). In other words, "[t]he great operative principle of Rule 37(a)(5) is that the loser pays," *In re Lamey*, 2015 WL 6666244 at *4 (D.N.M. 2015) (quoting Wright, Miller & Marcus, *Federal Practice and Procedure* (3d ed. 2010), § 2288, n.17), unless the failure to respond was substantially justified or an award or expenses would otherwise be unjust. *Id.* at *5.

In the event that the Court determines that fees must be awarded, the burden shifts to the applicant to "prove and establish the reasonableness of each dollar, each hour, above zero." *Jane*

4

*L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (citation omitted); *see Diaz v. Metzgar*, 2014 WL 12782782 at *7 (D.N.M. 2014) ("The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.") (quoting *Mares v. Credit Bureau of Raton*, 801 F. 2d 1197, 1201 (10th Cir. 1986)). The Court will then reach a "lodestar figure," which is the product of reasonable hours expended times a reasonable hourly rate. *See Mares*, 801 F. 2d at 1201. "The setting of a reasonable hourly rate is within the district court's discretion…. [and] [h]ourly rates must reflect the prevailing market rates in the relevant community." *Jane L.*, 61 F.3d at 1510 (citation omitted).

An applicant lawyer must keep "meticulous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* (citation omitted); *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1252 (10th Cir. 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."). This concept is particularly apt "where a party is seeking to have his opponent pay for his own lawyer's work." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998). As such, a lawyer's billing statement should "include the specific amounts of time allocated to each individual task." *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Jane L.*, 61 F.3d at 1510 (citation omitted); *see Case*, 157 F.3d at 1252 (declining to award fees where the party failed to establish that an attorney's work was reasonably necessary to their case and because her billing statements were "not clear.").

"A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Mares*, 801 F. 2d at 1203 (citations omitted); *Case*, 157 F.3d at 1252. As examples, the *Mares* court pointed to cases in which the Supreme Court reduced hours to account for a lawyer's lack of experience, for a failure to keep contemporaneous time records, and for unreasonable, unproductive or excessive time. *Mares*, 801 F. 2d at 1203 (citations omitted).

Additionally, once the Court has adequate time records before it, it must then ensure that the winning attorneys have exercised "billing judgment," which "consists of winnowing the hours actually expended down to the hours reasonably expended." *Case*, 157 F.3d at 1250. As the Supreme Court has stated, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary*[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quoted authority omitted) (emphasis in original); *see also Mares*, 801 F. 2d at 1204 (fee awards "were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client.") (quoted authority omitted). Thus, it is not proper to bill for every hour logged where adjustments may be made for lack of experience or conducting general research. *See Mares*, 801 F. 2d at 1204 (citations omitted).

### III. ANALYSIS

The Court is faced with a conundrum that the parties (through their counsel) have created. On the one hand, the Court granted Defendant's Motion to Compel in full, necessitating an award of attorney's fees. On the other, Defendants have failed to adhere to the principles expressed above requiring them to produce meticulous and contemporaneous time records in support of their fee request. Complicating matters, Plaintiff does not contest either the rates or

number of hours proposed by Defendant in its Response – instead apparently arguing that the interests of justice preclude the imposition of fees against it under the circumstances of this case. Having carefully reviewed all pertinent legal authority, and having researched similar fee awards in this district, the Court will award fees, but at a substantial reduction of those claimed by Defendant.

> **A) Plaintiff's nondisclosure was not substantially justified, and no circumstances here make an award of fees unjust.**

As noted, the Court was required to provide Plaintiff with an opportunity to be heard prior to the imposition of sanctions. Fed. R. Civ. P. 37(a)(5)(A). As such, the Court invited Plaintiff to "explain either why [Defendant's] requested costs and fees were not reasonably expended or why the imposition of sanctions would be unjust." *Doc. 50* at 12. Rather than contesting the requested costs and fees, Plaintiff argued that the imposition of fees would be unjust by arguing that Defendant has engaged in discovery bad faith and has run up fees by employing written communication. Plaintiff further requests that the Court consider Mr. Bradshaw's illness as a reason not to impose fees. *See Doc. 62* at 1-6. The Court is not persuaded by any of these arguments.

First, the Court agrees with Defendant that, to the extent it too is culpable for discovery misconduct, that issue is separate and apart from Plaintiff's failures necessitating Defendant's Motion to Compel. The parties have separately briefed *Plaintiff's* Motions to Compel, which address Defendant's perceived discovery failures. The Court anticipates issuing a decision on Plaintiff's Motion in short order, guided by the same standards that the Court applied to Defendant's Motion.

Second, the Court does not believe that Defendant's counsel did anything improper by communicating with Plaintiff's attorney in writing rather than by telephone. To the contrary, as

Defendant suggests, written communication may have been the only adequate means by which to communicate to the Court the extent to which Defendant attempted to meet and confer with Plaintiff prior to filing its Motion to Compel.

Finally, while Mr. Bradshaw's illness is regrettable, he made no attempt to notify the Court, opposing counsel, or his *own attorney* of the circumstances of said illness until *after* the Court had already granted Defendant's Motion to Compel and invited it to file its Motion for Sanctions. Had Mr. Bradshaw communicated his illness to his counsel, there is a possibility that Defendant may not have filed its Motion to Compel. Moreover, as admitted in Mr. Bradshaw's own affidavit, Defendant's discovery request and first attempts to meet and confer predated his illness. As such, the Court will not deny Defendant the sanctions it requests on this ground.

**B) The Court will exercise billing judgment to reduce the total hours requested.**

As set forth above, it is incumbent on the fee applicant to demonstrate the reasonableness of the fees requested. Defendant, however, does little more than state the total amount of hours requested by each of four attorneys and their respective hourly rates. *See Doc. 57-1* at 2. Without the meticulous and contemporaneous billing records contemplated by case law, the Court is left to guess which attorney performed which task. Defendant's summary of the tasks performed by these attorneys is no more specific, and demonstrates a lack of billing judgment for both duplicity of work and general research that local attorneys would not bill for. *See id.*

The Court is thus left with a bare assertion of hours (38.4 total hours of attorney time) that was dedicated to the Motion to Compel. *Id.* The Court will reduce these hours for time spent "conferring with local counsel regarding New Mexico local rules," because it has no choice to assume this time is duplicative or would not ordinarily be billed to a paying client. As such, the

Court will not allow time submitted by Defendant's local counsel, Mr. Robert Sutphin and Ms. Julia Broggi, which totals 1.7 hours. *Id.*

This leaves the matter of Defendant's primary counsel, Mr. James Barnett and Ms. Elizabeth Rudolf, (who are located in Utah). These attorneys billed a total of 36.7 hours for the Motion to Compel and related tasks. Ms. Rudolf, who has neither entered an appearance in this matter nor signed Defendant's Motion for Fees, billed 21.9 hours and Mr. Barnett (lead counsel) billed 14.8. Without meticulous and contemporaneous records to support the time requested, the Court cannot assume that counsel would ordinarily bill all of this time to a paying client. Given this posture, the Court would be well within its authority to deny fees entirely. *See Case*, 157 F.3d at 1252. Nonetheless, Plaintiff has not challenged the amount of hours expended by *any* of Defendant's attorney's, and the Tenth Circuit has cautioned against the Court simply eyeballing and arbitrarily reducing an uncontested fee request. *See Robinson*, 160 F.3d at 1286 ("[T]he fact that the district court here chose to depart significantly from the unchallenged portion of the plaintiffs' fee request, and did so only by applying a blanket reduction ratio, is a factor to consider in deciding whether the district court abused its discretion in the magnitude of the cuts ordered."). Still, with nothing to support the hours requested, the Court is hesitant to award fees for two attorneys, one whom has not even entered an appearance in this case. As such, the Court will exercise its discretion to disallow the hours claimed by Ms. Rudolf. Accordingly, the Court will award 14.8 hours of attorney time (representing the hours Mr. Barnett billed) to Defendant.

**C) The Court will reduce the hourly rate requested by Defendant.**

As with the number of hours requested, Defendant failed to provide any evidence that the hourly rate requested for Mr. Barnett ($450/hour) is reasonable for *this* district. *See Jane L.*, 61 F.3d at 1510 ("Hourly rates must reflect the prevailing market rates in the relevant community.

… Unless the subject of the litigation is so unusual or requires such special skills that only an out-of-state lawyer possesses, the fee rates of the local area should be applied even when the lawyers seeking fees are from another area."). "New Mexico is a relatively poor state, with some of the lowest hourly rates in the country." *XTO Energy, Inc. v. ATD, LLC*, CIV 14-1021 JB/SCY, 2016 WL 1730171 at *32 (D.N.M. 2016) (Collecting cases and stating that "[a] $400.00 rate would be close to the top, if not the top of the rates that the Court has approved or seen in New Mexico[.]"). Mr. Barnett practices out of defense counsel's Salt Lake City location, and is a Partner with the firm. <https://www.hollandhart.com/saltlakecity#people>. As such, the Court rejects the hourly rates he presents as reasonable for this district.

If the Court lacks adequate evidence to determine the prevailing market rate, it may use other factors, including its own knowledge, to establish the rate. *Case*, 157 F.3d at 1257. Defendant's counsel's website, which contains more information than their affidavit, discloses that Mr. Barnett "draws on more than 15 years of litigation experience." *See generally* <https://www.hollandhart.com/saltlakecity#people>. Having reviewed local cases, the Court determines that $275/hour is a reasonable hourly rate for Mr. Barnett. *See, e.g.*, *XTO Energy, Inc. v. ATD, LLC*, CIV 14-1021 JB/SCY, 2016 WL 1730171 at *32 (D.N.M. 2016) (collecting cases); *Payne v. TriState Careflight*, 278 F.Supp.3d 1276, 1297 (D.N.M. 2017) (Awarding an hourly rate of $350/hour to a litigator with over 30 years of experience.); *Long v. Eastern New Mexico University Board of Regents*, CIV 13-0380 RB/SMV, 2014 WL 12787911 at *3 (D.N.M. 2014) (Awarding $250/hour in 2014 to a litigator with 23 years of experience.); *Martinez v. Salazar*, CIV 14-0534 KG/WPL, 2015 WL 13638321 at *2 (D.N.M. 2015) (Awarding $200/hour in 2014 to a litigator with 8 years of experience); *Copar Pumice Co., Inc. v. Morris*, CIV 07-0079 JB/ACT, 2012 WL 2383667 at *19 (D.N.M. 2012) (Awarding $235/hour for partners in 2014).

### D) Lodestar Calculation.

Given the above, the Court will award the following amount:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| James Barnett | 14.8 | $275 | $4,070.00 |
| | | **Total:** | **$4,070.00** |

## IV. CONCLUSION

The purpose of fee-shifting rules "is to protect and further legal rights by removing a disincentive to vindicating those rights (namely, the cost of retaining attorneys to pursue the rights) and creating a disincentive to violating them or failing to compensate victims for violations (namely, the cost of paying for the victim's attorneys)." *Centennial Archaeology, Inc.*, 688 F.3d at 679 (citations omitted). That being said, "[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero." *Mares*, 801 F. 2d at 1210. The Court finds that Defendant is entitled to its attorneys' fees associated with the filing of its Motion to Compel, but, for the reasons described above, will severely reduce the requested award because of its failure to support the hours and hourly rates requested. As such, Defendant's Motion for Fees is granted in part and denied in part for the reasons explained herein. Plaintiff shall pay Defendant **$4,070.00** within thirty (30) days of the entry of this order.

IT IS SO ORDERED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE