IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ENVIRONMENTAL DIMENSIONS, INC.,
A New Mexico Corporation,

      Plaintiff,

v.                                                                                                                                       CV 16-1056 WJ/JHR

ENERGYSOLUTIONS GOVERNMENT
GROUP, INC. (n/k/a Atkins Energy
Government Group, Inc.), a foreign for
profit corporation,

      Defendant.

# **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Energy Solutions Government Group, Inc.'s ("ESGG") Motion to quash Environmental Dimension, Inc.'s ("EDi") Subpoenas to the Department of Energy ("DOE") and National Nuclear Security Administration ("NNSA") and for a Protective Order [Doc. 87], filed September 27, 2018. The Court has considered EDi's Response[1] and ESGG's Reply briefs, as well as all pertinent authority. Having done so, the Court concludes that ESGG's Motion to quash and for a protective order must be denied.

**I.    BACKGROUND**

EDi is in the business of providing environmental services to the United States DOE and other governmental agencies. [Doc. 1-1, p.3]. As such, during the relevant time period it was competing for contracts with Los Alamos National Laboratory ("LANL") which were set aside

---

[1] ESGG argues that EDi's Response should be ignored as untimely filed. [*See* Doc. 95]. The Court rejects this argument. Under this Court's Local Rules, EDi's Response brief was due "within fourteen (14) calendar days after service of the motion." D.N.M.LR-Civ 7.4(a). This time period is to be computed "in accordance with FED. R. CIV. P. 6(a) and (d)[.]" *Id.* Under Rule 6(a)(1)(A) the day of the event that triggers the time period is excluded. Fed. R. Civ. P. 6(a)(1)(A). Therefore, EDi's Response brief was due on October 12, 2018, the day it was filed. [*See* Doc. 90].

1

for small businesses in New Mexico. [*Id.*]. Ultimately, EDi was awarded a contract with Los Alamos National Security ("LANS") which provided that EDi would manage, treat, and package radioactive waste for LANS at the LANL facility. [*Id.*, p. 4]. Prior to the award of the LANS contract, EDi contracted with ESGG, the prior prime contractor to LANS, to "provide expert waste management personnel experienced in the LANS [Transuranic] Waste Program and knowledgeable of specific processes and procedures." [*Id.*]. Included among these duties was "waste treatment and packaging for shipment to the DOE Waste Isolation Pilot Plaint (hereinafter 'WIPP')." [*Id.*, p. 5].

The WIPP facility is an underground repository for the disposal of transuranic and other radiological waste. [Doc. 87, p. 4]. Prior to the contract underlying this case, ESGG was the prime contractor responsible for remediating and repackaging waste at LANL under LANS' direction. [*Id.*]. On February 14, 2014, there was a release of radiological materials at the WIPP facility "allegedly from" a drum of transuranic waste that had been repackaged and shipped to WIPP from LANL by ESGG. [*Id.*, p. 6]. In the meantime, on April 16, 2014, LANS notified EDi that it had been awarded the prime contract relating to waste disposal. [*Id.*].

After the parties' relationship soured, EDi sued ESGG in New Mexico State Court asserting that ESGG engaged in unfair trade practices by failing to divulge its deficiencies in managing Transuranic Waste Operations while it was the prime contractor to LANS. Specifically, EDi alleges that:

> 28. DEFENDANT ESGG was a major contractor to LANS at the LANL facility in Los Alamos, New Mexico, prior to the award of the contract by LANS to PLAINTIFF EDi.
>
> 29. DEFENDANT ESGG was grossly negligent in its operations and contract work at LANL for LANS as described in the Department of Energy (DOE) Accident Investigation Board (AIB) Report dated April 16, 2015.

30. DEFENDANT ESGG knew or should have known that its conduct was grossly deficient and would result in punitive measures being taken against it by LANS when the DOE AIB Report was released.

31. Said punitive measures were underscored by the AIB Report identifying serious findings against ESGG's LANL Transuranic Waste Operations (TRU waste).

32. DEFENDANT ESGG knew or should have known that its prior conduct would cause LANS to void or reduce the tasks assigned thereunder, or alter the contract held by PLAINTIFF EDi in a manner that would seriously damage the work PLAINTIFF EDi anticipated receiving under the contract in Paragraphs 3 & 4 above.

33. DEFENDANT ESGG knew or should have known that its conduct was going to be an issue in any future deadlines (e.g., those where PLAINTIFF EDi was engaging DEFENDANT ESGG as a subcontractor) on LANS contracts whether as a prime or subcontractor.

[*See* Doc. 1-1, pp. 9-11]. Based on allegations that are substantively similar, EDi brings a claim for tortious damage to reputation and contract. [*See* Doc. 1-1, pp. 11-12]. ESGG timely removed this matter to federal court on September 23, 2016. [*See generally* Doc. 1].

The instant dispute pertains to an "alleged"[2] settlement agreement between ESGG and the DOE/NNSA resulting from ESGG's actions when it was the prime contractor to LANS. These allegations have framed two of the discovery disputes that this Court has decided. [*See* Docs. 73, 76]. In the first, EDi sought to compel production of the alleged settlement agreement from LANS by virtue of a subpoena. [*See* Doc. 73]. The Court denied EDi's motion because it failed to subpoena LANS the entity, instead subpoenaing a LANS employee who had neither possession nor control of the alleged agreement. [*Id.*, p. 2]. In the second, EDi sought to compel production of the alleged agreement from ESGG directly. [*See* Doc. 76]. The Court denied EDi's motion because it was untimely and failed to conform to the requirements of this district's Local Rules. [*Id.*, p. 1].

---

[2] Though ostensibly a party to said agreement, ESGG does not admit to its existence. [*See generally* Doc. 87].

3

The instant Motion involves EDi's subpoenas to the DOE and NNSA, which seek, among other things, the alleged settlement agreement between the DOE and ESGG. ESGG has moved to quash the subpoenas, arguing that they improperly seek discoverable information from a non-party which is irrelevant to this case and unduly burdensome for the DOE and NNSA to comply with. [*See* Doc. 87, pp. 6-16]. ESGG also argues that EDi's Motion should be denied because it seeks the same discovery that the Court previously denied and because, assuming that such a settlement agreement exists, it is confidential. [*Id.*]. EDi responds that the requests are relevant, and not overly-burdensome. [*See* Doc. 90, pp. 3-5]. EDi further argues that, even if the alleged agreement has a confidentiality provision, that fact would not bar its disclosure. [*Id.*]. Neither party broaches the topic of whether ESGG has standing to move to quash EDi's subpoenas; however, the Court finds that issue to be dispositive, for the reasons set forth below.

II.  **LEGAL STANDARDS**

Federal Rule of Civil Procedure 45 governs subpoenas directed at nonparties to litigation. *See generally* Fed. R. Civ. P. 45. Under the Rule, the issuing court must quash or modify a subpoena that fails to allow reasonable time for compliance, requires excessive travel, requires the disclosure of privileged or other protected materials, or subjects the subpoenaed person or entity to an undue burden. Fed. R. Civ. P. 45(d)(3). Additionally, while Rule 45 does not specifically provide for lack of relevance as a reason for quashing a subpoena, it is well settled that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b). *Booth v. Davis*, CV 10-4010 RDR, 2011 WL 2008284 at *6 (D. Kan. 2011). Under Rule 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

>expense of the propose discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Under the Federal Rules, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

### III. ANALYSIS

#### A) Standing

"Before addressing the merits of any given case, a federal court must determine that the complaining party has standing to raise his claims." *Morris v. Ulibarri*, CV 06-1052 MV/DJS, 2010 WL 11474423 at *2 (D.N.M. 2010) (citing *Horne v. Flores*, 129 S.Ct. 2579, 2592 (2009)). Generally, a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought or upon a showing that there is an applicable privacy interest. *See Morris*, 2010 WL 11474423 at *2; *Booth v. Davis*, CV 10-4010 RDR, 2011 WL 2008284 at *2 (D. Kan. 2011); *Martin v. National Union Fire Insurance Co. of Pittsburg, PA*, CV 13-0285 MAP, 2013 WL 12156516 at *1 (M.D. Fla. 2013); *Charles Schwab & Co., Inc. v. Highwater Wealth Management, LLC*, CV 17-0803 CMA/NYW, 2017 WL 4278494 at *4 (D. Colo. 2017); *Paramo v. Aspira Bilingual Cyber Charter School*, CV 17-3863, 2018 WL 4538422 at *3 (E.D. Penn. 2018). In other words, only the person or entity subject to the subpoena has standing to object to it, unless a privilege or privacy interest is shown. *Morris*, 2010 WL 11474423 at *2. "Absent a specific showing of privilege or privacy, a court cannot quash a subpoena duces tecum." *Windsor v. Martindale*, 175 F.R.D. 665 (D. Colo. 1997). Such a privacy interest has been found where the subpoenaed documents consist of medical or financial records. *See, e.g.*, *Shutrump v. Safeco Insurance Co. of America*, CV 17-0022 CVE/TLW, 2017 WL 3579211 at *2 (N.D. Okla. 2017). However, "[f]or a party to have standing to challenge a subpoena

served on a non-party, there must be more than a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive." *Powell v. Allied Universal Security Services*, CV 12-6133 ARR/SJB, 2018 WL 4378168 at *1 (E.D.N.Y. 2018) (quoted authority omitted).

Applying these principles here, ESGG could have demonstrated standing were it to admit to the existence of the settlement agreement between itself and DOE. *See Church v. Dana Kepner Co., Inc.*, CV 11-2632 CMA/MEH, 2013 WL 24437 at *1 (D. Colo. 2013). However, ESGG does not even admit to the existence of the agreement. Therefore, the Court finds that ESGG's assertions of confidentiality are conclusory, at best, and insufficient to establish standing to challenge the subpoenas.

**B) Alternatively, on its merits ESGG's Motion must be denied.**

Even assuming *arguendo* that ESGG has standing to challenge EDi's subpoenas, there is no merit in its Motion to quash. As to ESGG's first argument, that "EDi should not be permitted to burden non-parties for discovery that should have been sought from ESGG[,]" [Doc. 87, p. 6], the Court notes that "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party." *Black Card, LLC v. Visa U.S.A., Inc.*, CV 15-0027, 2016 WL 7325684 at * 3 (D. Wyo. 2016) (quoted authority omitted). Therefore, ESGG's first contention in support of its Motion to quash is rejected.

ESGG's second argument, that the Court should quash the subpoenas because they seek the alleged settlement agreement that has been the subject of previous motions to compel, is also easily disposed of. As noted above, the Court denied both of EDi's motions to compel the alleged

6

settlement agreement on procedural grounds, never reaching the substance of whether the agreement should be provided. [*See* Docs. 73, 76]. There is no basis in the rules to quash EDi's subpoenas merely because its previous attempts to obtain the alleged settlement agreement failed.

On a more substantive note, ESGG argues that the information requested by EDi's subpoenas is irrelevant to the pending litigation "to prejudicial effect." [Doc. 87, p. 9]. To this end, ESGG argues that EDi's subpoenas are directed at "ESGG's alleged liability for the WIPP Incident," and that "[a]ny discovery into WIPP causation and liability is irrelevant to this litigation because it would have resulted from an entirely different contractual relationship to which EDi was not a party." [Doc. 87, p. 9]. Thus, ESGG argues, "[t]he WIPP Incident was completely unrelated to EDi's contractual relationship with ESGG[.]" [*Id.*, p. 10]. ESGG then argues that any attempt by EDi to support its liability case by reference to the WIPP incident would be an improper "attempt to assert third party beneficiary status to which it is not entitled." [*Id.*, p. 12]. In response, EDi argues that the alleged settlement agreement is relevant because "the work and claims relating to the settlement agreement overlap in both nature and scope of the work and claims in this case." [Doc. 90, p. 3].

The Court agrees with EDi that the alleged settlement agreement and associated documents are relevant to its claims in this case. As set forth above, two of EDi's claims are premised almost entirely on the WIPP incident and the effect that incident had on the contract between LANS and EDi. Thus, while the Court agrees with ESGG's premise that the WIPP incident resulted from a different contract with LANS, it cannot agree with its conclusion that such an agreement is therefore irrelevant to EDi's claims in this case. To the contrary, a reasonable fact finder may determine that the WIPP incident was a cause of EDi's alleged damages in this case.

ESGG's other arguments in favor of its Motion to quash are rejected. ESGG argues that EDi's subpoenas are overly burdensome. [*See* Doc. 95, p. 6]. However, a party does not have standing to assert the rights of the non-party who is subject to the subpoena. *Morris*, 2010 WL 11474423 at *2. Thus, even where a party has standing to move to quash a subpoena, it lacks standing to object on the basis of undue burden or disproportionality to the needs of the case. *See Charles Schwab & Co., Inc.*, 2017 WL 4278494 at *4; *Paramo*, 2018 WL 4538422 at *3; *Powell v. Allied Universal Security Services*, CV 12-6133 ARR/SJB, 2018 WL 4378168 at *1 (E.D.N.Y. 2018).

ESGG also argues that "discovery into confidential settlement agreements requires a heightened showing of relevancy based on the public policy of favoring and encouraging settlement agreements." [Doc. 87, p. 15]. The Court agrees with this statement in principle; however, the moving party has the burden to establish that the information sought is confidential and that its disclosure will work a clearly defined and serious injury to the moving party. *See Western Vision Software, L.C. v. Process Vision, LLC*, CV 12-0155, 2013 WL 1411778 at *2 (D. Utah 2013). This ESGG has not done. To wit, ESGG has not even admitted that the alleged agreement exists. Moreover, ESGG has not convinced the Court that the law it on its side. "In the context of settlement agreements, the mere fact that the settling parties agree to maintain the confidentiality of their agreement does not serve to shield the agreement from discovery." *Heer v. Costco Wholesale Corp.*, CV 12-1059 RB/KBM, 2013 WL 12062256 at *2 (D.N.M. 2013); *see also Church*, 2013 WL 24437 at *3; *Tanner v. Johnston*, CV 11-0028 TS/DBP, 2013 WL 121158 at *3 (D. Utah 2013); *Kelly v. Romines*, MC 11-0047 JB, 2012 WL 681806 at *5-6 (D.N.M. 2012) ("If the Court were to find otherwise, corporations and individuals could shield from discovery their documents by giving them to a third party and entering into a confidentiality agreement; that

8

scenario cannot be sound law."). Thus, rather than preclude discovery of such agreements, courts have addressed confidentiality concerns by encouraging the parties to enter into a confidentiality agreement. *See, e.g.*, *Loomis v. I-Flow, LLC*, CV 11-1007 JCH/ACT, 2013 WL 12330077 at *3 (D.N.M. 2013); *Martin v. National Union Fire Insurance Co. of Pittsburg, PA*, CV 13-0285 MAP, 2013 WL 12156516 at *2 (M.D. Fla. 2013); *Booth*, 2011 WL 2008284 at *8. Having found that the alleged agreement is discoverable, the Court encourages the parties here to discuss entering into a confidentiality agreement.

Finally, ESGG has not demonstrated entitlement to a protective order under Rule 26(c). The Federal Rules require a request for a court order to "state with particularity the grounds for seeking the order[.]" Fed. R. Civ. P. 7(b)(1)(B). However, nowhere in its briefing does ESGG discuss the standards under Rule 26(c) or its or any other person's purported entitlement to such an order. *See* Fed. R. Civ. P. 26(c). As such, ESGG's motion for a protective order is denied.

## IV. CONCLUSION

ESGG has failed to demonstrate its standing to quash subpoenas to non-parties relating to a settlement agreement it will not admit exists. However, even if considered on their merits, ESGG's objections must be rejected because the alleged settlement agreement and the underlying WIPP incident are relevant to EDi's claims. Therefore, ESGG's Motion to quash and for a protective order [Doc. 87] is hereby DENIED.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE

9