# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ENVIRONMENTAL DIMENSIONS, INC.,

    Plaintiff,

v.                                                                                                      No. 1:16-cv-1056-WJ-JHR

ENERGYSOLUTIONS GOVERNMENT
GROUP, INC. (n/k/a Atkins Energy
Government Group, Inc.),

    Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CAUSES OF ACTION FOR BREACH OF CONTRACT AND FRAUD

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment on Plaintiff's Claims for Breach of Contract and Fraud [Doc. 101], filed November 19, 2018. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is well-taken and, therefore, is **GRANTED**.

## BACKGROUND

These claims arise from a dispute involving a nuclear waste remediation project the parties worked on together at Los Alamos National Lab ("LANL"). Plaintiff is in the business of providing environmental resources and radioactive waste management and containment support to the U.S. Department of Energy and other government agencies. The company is managed predominately by its Vice President, Michael Bradshaw ("Bradshaw"). Plaintiff engaged in a bidding process for qualification to contract with Los Alamos National Security, LLC ("LANS") to perform transuranic waste remediation work at LANL. Defendant provides nuclear waste remediation and personnel support and worked with LANL previously on other projects. Prior to

submitting its bid, Plaintiff executed a Teaming Agreement with Defendant on July 12, 2011, specifying the duties and responsibilities of the parties should the bid be accepted. The Agreement includes that, "[i]n any event, EnergySolutions' share will be a minimum of 35% of the total contract labor value earned in performance of the life cycle of the anticipated contract issued by LANS." The Agreement contains an additional provision that "[e]xcept as expressly provided … all rights and obligations of the parties under this Agreement shall terminate on the earliest of the following: … e. Execution by both parties of the subcontract contemplated by this Agreement." (Doc. 99 Ex. G).

When Plaintiff was subsequently awarded the contract, denominated as Master Task Order Agreement 2 ("MTOA2"), it subcontracted with Defendant and two other companies to carry out the work. Plaintiff executed the subcontract with Defendant in August 2013, which incorporated the language of the Teaming Agreement guaranteeing Defendant a 35% minimum share of the labor. Work began on the project in July 2014.

Plaintiff's employees, project manager Chris Edgmon ("Edgmon") and COO/VP of business development John Rodell ("Rodell")[1] were tasked with coordinating the work on a day-to-day basis. Edgmon was responsible for, among other things, scheduling work, budgeting, and approving invoices submitted by the subcontractors, which in turn were submitted to Rodell for review and approval. Bradshaw had little involvement in the day-to-day operations of the project, and most decisions were largely left to Edgmon and Rodell.

Defendant took on a larger role than the other subcontractors in performance of the work, consequently billing for a larger share than the minimum 35% expressed in the Teaming Agreement and the subcontract. It is undisputed that Defendant only carried out work authorized

---

[1] It is unclear what Rodell's exact title is, but the record reflects that Edgmon deferred to him and he made final decisions regarding the project on a day-to-day basis.

by Plaintiff; that Defendant submitted six invoices dating from March 10 - August 11, 2015 amounting to $1,057,354.63, for which it was not paid; and that Plaintiff submitted invoices to LANS for the same work and received payment. On May 12, 2015, Bradshaw sent a letter of cure to Defendant stating it was not in compliance with the terms of the Teaming Agreement and that "[i]n spite of repeated attempts by EDi to realign the staffing to meet the TA [Teaming Agreement] goals, Energy*Solutions* continued refusal has forced us to take action… [i]f this matter is not resolved by Friday May 15, 2015, any work [going forward] performed by Energy*Solutions* above and beyond 35% is done so solely at Energy*Solutions'* risk." (Doc. 112 Ex. 2). After Bradshaw's letter, Plaintiff continued to assign work to Defendant, which it performed until the underlying Task Order was terminated by LANS on May 27, 2015.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 922 F.3d 1033, 1036 (10th Cir. 1993) (citations omitted). Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).

A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the nonmoving party. *EEOC v. Horizon/CMS Heathcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). A court is to view the

facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and thus, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## DISCUSSION

### I. Preliminary Matter: Local Rule 7.1

For the same reasons advanced by the Court in its prior Memorandum Opinion and Order (Doc. 155), the Court rejects Plaintiff's argument that summary judgment should be denied due to Defendant's alleged procedural violation of Local Rule 7.1 for failure to confer with Plaintiff prior to submission of this motion.

### II. Breach of Contract

#### A. Parties' Assertions

Plaintiff claims that Defendant breached the terms of the Teaming Agreement by exceeding its 35% share of the labor allocated to it by the agreement. Plaintiff states that despite communication to Defendant to cease billing beyond that percentage and efforts to reduce and transfer Defendant's staff to reapportion work between the subcontractors, Defendant continued to bill for approximately 68% of the contract labor to the exclusion of the other subcontractors. Plaintiff claims Defendant used "heavy-handed tactics" and "overruled" Plaintiff's managerial staff (Doc. 112-Page 6) and continued to work on and submit invoices for the project after receipt of Bradshaw's letter.

Defendant asserts that summary judgment is warranted because the Teaming Agreement terminated upon execution of the subcontract; that irrespective of its termination, pursuant to the terms of both the Teaming Agreement and the subcontract Defendant was entitled to *a minimum* (emphasis added) of 35% of the labor; that Defendant only conducted work it was authorized to do; that Defendant complied with all directives and requests issued by Plaintiff; and that following Bradshaw's letter of cure, Plaintiff nevertheless continued to assign work to Defendant.

In opposition, Plaintiff posits that genuine issues of material fact exist, specifically that Defendant controlled the work to the exclusion of the other subcontractors; that Defendant ignored repeated requests from Plaintiff to reduce and transfer employees to re-align with required percentages; and that following Bradshaw's letter of cure, Defendant could have refused further work assigned by Plaintiff. Plaintiff also raises a new argument, which is not plead separately in the Complaint or as a basis for the breach of contract violation, that Defendant violated its duty of good faith and fair dealing in that prior to executing the Teaming Agreement, Defendant failed to disclose the extent of and misrepresented its involvement in a failed radiation containment incident in 2014, relating to a prior project Defendant engaged in separately with LANL, in which an improperly packaged waste drum burst ("WIPP incident"). Plaintiff claims that Defendant's alleged error in that project, and its failure to notify Plaintiff prior to entering into the Teaming Agreement, ultimately resulted in the closure of the Waste Isolation Pilot Plant ("WIPP") facility relevant to MTOA2, leading to cancellation of Plaintiff's Task Order.

**B.** **<u>Analysis</u>**

The Court finds unavailing, and unsupported by the record, Plaintiff's breach of contract arguments that Plaintiff violated the Teaming Agreement by performing more than 35% of the work to the exclusion of the other subcontractors; misrepresented its involvement in the WIPP

incident, which Plaintiff was not a party to; and failed to limit its work on the project following receipt of Bradshaw's letter.

The parties' contract is governed by the laws of New Mexico (Doc. 99 Ex. G). Pursuant to New Mexico law, the elements of a breach of contract action include: "(1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach." *McCasland v. Prather*, 585 P.2d 336, 338 (Ct. App. 1978).

In *ConocoPhillips Co. v. Lyons* (2013-NMSC-009, ¶ 9, 299 P.3d 844, 849), a contractual dispute relating to interpretation of state gas and oil leases, the Court explained

> Courts will grant summary judgment and 'interpret the meaning as a matter of law' when the 'evidence presented is so plain' that it is only reasonably open to one interpretation. If, however, a court determines that the contract is 'reasonably and fairly' open to multiple constructions, then 'an ambiguity exists,' summary judgment should be denied, and the jury should resolve all 'factual issues presented by the ambiguity' (internal citations omitted).

An ambiguity exists where

> the parties' expressions of mutual assent lack clarity. *C.R. Anthony,* 112 N.M. at 509 n. 2, 817 P.2d at 243 n. 2. The question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court. *Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. *C.R. Anthony,* 112 N.M. at 508–09, 817 P.2d at 242–43. … If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. *Vickers v. North Am. Land Dev., Inc.,* 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder, *C.R. Anthony,* 112 N.M. at 510, 817 P.2d at 244.

*Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12, 845 P.2d 1232, 1235.

1. **The 35% Minimum Labor Share**

Plaintiff claims that Defendant breached the terms of the Teaming Agreement by engaging in more than 35% share of the total labor; that the 35% minimum allocation was not intended to be to the exclusion of the other subcontractors; that Defendant monopolized the workflow and overruled Plaintiff management in its efforts to redistribute the workload; and that Defendant should have refused to continue work upon receipt of Bradshaw's letter of cure. Plaintiff also disputes Defendant's assertion that the Teaming Agreement expired upon execution of the subcontract. However, the terms of the Teaming Agreement and the subcontract both expressly provide that the 35% share of labor is *a minimum* guarantee, not a maximum, which both Bradshaw and Edgmon confirmed in their respective depositions. (Doc. 99 Ex G; SOF 11, 13).

Plaintiff repeatedly acknowledges that the 35% was a minimum threshold guarantee (Doc. 99 Ex. C 77:22-78:1; Ex. A 69:3–9, 69:20–70:2) but argues that the contract did not contemplate billing beyond 35% to the exclusion of the other subcontractors. Plaintiff fails to refer to any supporting contract provision or evidence in the record. The portions of the record Plaintiff relies upon are merely the deposition videographer's statement of the time and notation that the parties are now off the record (Doc. 112-1 Page 5), and a vague, conclusory allegation from Bradshaw that Defendant employed heavy-handed tactics. *See Langley v. Adams Cty., Colo.*, 987 F.2d 1473 (10th Cir. 1993) (nonmovant "must identify sufficient evidence which would require submission of the case to a jury"; *Elephant Butte Irr. Dist. of New Mexico v. U.S. Dept. of Interior*, 538 F.3d 1299, 1305 (10th Cir. 2008) (Fed.R.Civ.P.56 requires that party opposing motion for summary judgment must set out specific facts showing a genuine issue for trial).

Plaintiff's remaining arguments are without merit. A plain reading of the Teaming Agreement reveals that it unambiguously prescribes that the contract expires upon execution of

the subcontract. Additionally, Plaintiff's proposition that Defendant should have limited or ceased work of its own accord following receipt of Bradshaw's letter is particularly untenable given unrefuted testimony that Defendant only engaged in work it was authorized to do, and that Plaintiff continued to assign it work after the letter. SOF 20-22.

The Court holds that Defendant did not breach the contract in performing more than 35% of the labor since the 35% provision of the Teaming Agreement, which in any event expired upon execution of the subcontract, as well as the same language reflected in the subcontract, is capable of only one interpretation and is unambiguous in meaning and intent. *See ConocoPhillips Co. v. Lyons*, P.3d 844 at 852.

### 2. The WIPP Facility Incident

Plaintiff next alleges that prior to contracting with Defendant, Defendant misrepresented the extent of its involvement in the WIPP incident, in which a containment waste drum burst due to improper packaging. This argument is equally unavailing given the timing of the WIPP incident, which occurred on February 14, 2014, approximately three years after the parties entered into the Teaming Agreement and six months after the subcontract. The record reflects, from the testimony of Plaintiff's employees directly involved with the MTOA2 project, that no misrepresentations were made by Defendant at the time of entering into the Teaming Agreement or the subcontract, and that Defendant did not attempt to obscure its involvement after the WIPP incident, but was in fact cooperative. (Doc. 99 Ex. B 102: 15-22; Ex. C 187: 13-25; Ex. D 202: 1-19). Nor is the Court convinced by Plaintiff's conclusory statement that the WIPP incident was attributable to the cancellation of Plaintiff's contract with LANL, considering Plaintiff's employees' contradictory testimony. (Doc. 99 Ex. C 146: 16-25, 147: 10-14; Ex. D 197: 8-25-198:1).

### 3. Bradshaw's Letter of Cure and Failure to Transfer Employees

Plaintiff seeks to raise an issue of material fact by pointing to Defendant's continued work on the MTOA2 project following receipt of Bradshaw's letter, which Plaintiff claims was effectively a stop work order. However, Plaintiff continued to assign work to Defendant after sending the letter (SOF 35), and as previously stated, Plaintiff's argument that Defendant could have refused to carry out these assignments is illogical.

Finally, Plaintiff claims that Defendant breached the contract in failing to comply with its directives regarding reducing and transferring Defendant's staff to redistribute the share of the labor more equally between the subcontractors. In support, Plaintiff provides email communication between Rodell and an employee of Defendant requesting a response to reallocate certain personnel from Defendant to other subcontractors, as well as an email from Defendant indicating an unwillingness to further reduce or transfer staff (Doc. 112 Exs. 4-5). Defendant accurately notes that there is nothing in the language of the contract requiring Defendant to reallocate or transfer its employees to another subcontractor. Plaintiff's proffering of these emails is further rebutted by Bradshaw's acknowledgment that Defendant was not contractually bound to transfer employees to other subcontractors (Doc. 120 Page 10). Moreover, Edgmon testified that Defendant always complied with his transfer requests (SOF 25). Since the Court determines that no genuine dispute of material fact exist, the Court grants Defendant's motion for summary judgment on Plaintiff's breach of contract claim.

### III.  Fraud

Defendant contends that Plaintiff's cause of action for fraud is inapposite because Plaintiff has not established the requisite elements of fraud and did not plead the cause of action with particularity pursuant to Federal Rules of Civil Procedure 9(b).

New Mexico Law provides that the elements of fraud include: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation" (*Williams v Stewart*, 112 P.3d 281, 290 [Ct. App. 2005]).

Plaintiff opposes the motion, relying again upon the argument that Defendant committed fraud by not informing Plaintiff of potential negative outcomes associated with the WIPP incident. The Court rejects this argument for the reasons previously stated, the facts do not bear out Plaintiff's contentions and, notably, Plaintiff's employees' testimony corroborates that Defendant did not make misrepresentations when contracting with Plaintiff. The record is further devoid of evidence of an intent to deceive Plaintiff and induce reliance upon any misrepresentations. On the contrary, Edgmon and Rodell both confirmed that Defendant offered to withdraw as subcontractor following the WIPP incident, to avoid potential complications for Plaintiff (Edgmon Dep. 187: 19-25; 188: 1-17; Rodell Dep. 197: 8-25; 198: 1).

Plaintiff has failed to establish essential elements of fraud or to demonstrate a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). As such, the Court need not reach the merits of Defendant's Rule 9(b) argument and Defendant's motion is granted.

## CONCLUSION

Summary judgment necessitates consideration of "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). Viewing the evidence in the light most favorable to Plaintiff, no issues of material fact

exist. Plaintiff has failed to establish adequate grounds for breach of contract or fraud.

**THEREFORE, IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 101) on Plaintiff's causes of action for breach of contract and fraud is hereby **GRANTED.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE