# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

———————————

ENVIRONMENTAL DIMENSIONS, INC.,

    Plaintiff,

v.                                                                               No. 1:16-cv-1056-KWR-JHR

ENERGYSOLUTIONS GOVERNMENT
GROUP, INC. (n/k/a Atkins Energy
Government Group, Inc.),

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon its Order Denying Plaintiff's Motion to Appoint an Independent Mediator and Requiring a Status Report, filed May 19, 2020 **(Doc. 190)**. The Court previously granted summary judgment in favor of Defendant on all of Plaintiff's claims **(Doc. 167)**. Defendant also prevailed on certain counterclaims against Plaintiff, which appear to resolve all issues surrounding liability **(Doc. 188)**. Pursuant to the Court's Order, the parties have submitted their respective status reports. The Court has accepted Defendant's request to rule upon the remaining counterclaims within its Motion for Summary Judgment on Defendant's Counterclaims **(Doc. 98)**, which was opposed by Plaintiff **(Doc. 113)**. Plaintiff's status report is effectively non-responsive to the Court's directive.

### BACKGROUND[1]

The claims arise from a dispute involving a nuclear waste remediation project the parties worked on together at Los Alamos National Lab ("LANL"). Plaintiff is in the business of

---

[1] The Court incorporates the following factual background from findings in its preceding MOO's. *See* Docs. 167, 168 and 188.

providing environmental resources and radioactive waste management and containment support to the U.S. Department of Energy and other government agencies. The company is managed predominately by its Vice President, Michael Bradshaw ("Bradshaw").  Plaintiff engaged in a bidding process for qualification to contract with Los Alamos National Security, LLC ("LANS") to perform transuranic waste remediation work at LANL.  Defendant provides nuclear waste remediation and personnel support and worked with LANL previously on other projects.  Prior to submitting its bid, Plaintiff executed a Teaming Agreement with Defendant on July 12, 2011, specifying the duties and responsibilities of the parties should the bid be accepted.  The Agreement includes that, "[i]n any event, EnergySolutions' share will be a minimum of 35% of the total contract labor value earned in performance of the life cycle of the anticipated contract issued by LANS."  The Agreement contains an additional provision that "[e]xcept as expressly provided … all rights and obligations of the parties under this Agreement shall terminate on the earliest of the following: … e. Execution by both parties of the subcontract contemplated by this Agreement." **(Doc. 99** Ex. G).

When Plaintiff was subsequently awarded the contract, denominated as Master Task Order Agreement 2 ("MTOA2"), it subcontracted with Defendant and two other companies to carry out the work.  Plaintiff executed the subcontract with Defendant in August 2013, which incorporated the language of the Teaming Agreement guaranteeing Defendant a 35% minimum share of the labor.  The subcontract further provided that "[p]ayments shall be issued to Subcontractor after receipt and approval of Subcontractor's invoices by EDi and within 10 days of receipt of payment from the [LANS]."

Through a series of modifications, Defendant was authorized to bill up to $3,500,000 for completed work. At no time did Defendant exceed this amount. Work began on the project in July 2014.

Plaintiff's employees, project manager Chris Edgmon ("Edgmon") and COO/VP of business development John Rodell ("Rodell")[2] were tasked with coordinating the work on a day-to-day basis. Edgmon was responsible for, among other things, scheduling work, budgeting, and approving invoices submitted by the subcontractors, which in turn were submitted to Rodell for review and approval. Bradshaw had little involvement in the day-to-day operations of the project, and most decisions were largely left to Edgmon and Rodell.

Defendant took on a larger role than the other subcontractors in performance of the work, consequently billing for a larger share than the minimum 35% expressed in the Teaming Agreement and the subcontract. It is undisputed that Defendant only carried out work authorized by Plaintiff; that Defendant submitted six invoices dating from March 10 - August 11, 2015 amounting to $1,057,354.63, for which it was not paid; and that Plaintiff submitted invoices to LANS for the same work and received payment. On May 12, 2015, Bradshaw sent a letter of cure to Defendant stating it was not in compliance with the terms of the Teaming Agreement and that "[i]n spite of repeated attempts by EDi to realign the staffing to meet the TA [Teaming Agreement] goals, Energy*Solutions* continued refusal has forced us to take action… [i]f this matter is not resolved by Friday May 15, 2015, any work [going forward] performed by Energy*Solutions* above and beyond 35% is done so solely at Energy*Solutions'* risk." (**Doc. 113** Ex. 2). After Bradshaw's letter, Plaintiff continued to assign work to Defendant, which it performed until the underlying Task Order was terminated by LANS on May 27, 2015.

---

[2] It is unclear what Rodell's exact title is, but the record reflects that Edgmon deferred to him and he made final decisions regarding the project on a day-to-day basis.

3

Plaintiff originally sued Defendant raising, among other claims, breach of contract and violation of New Mexico's Unfair Trade Practices Act. Plaintiff largely attributed LANS' choice to terminate the project and perform more work internally as a punitive measure in response to Defendant's alleged misconduct during the February 14, 2014 "WIPP incident," when an improperly packaged waste drum packaged by Defendant at LANL, while working on another project[3], underwent an exothermic reaction and burst, causing a radiological release.

### RELEVANT PROCEDURAL HISTORY

On November 8, 2019, the Court denied Defendant's Motion for Summary Judgment on its Counterclaims (November Order) for, *inter alia*, breach of contract, or in the alternative, breach of covenant of good faith and fair dealing and unjust enrichment. Defendant seeks damages in the amount of $1,057,354.63; the total of payments withheld by Plaintiff for the work Defendant performed. *See* Memorandum Opinion and Order **(Doc. 158)**. The Court did not reach the merits of the majority of Defendant's claims, denying the motion instead because, although Defendant's argument was "persuasive," it sought payment for work performed after the issuance of Bradshaw's May 12 letter, as opposed to work completed solely beforehand. On February 11, 2020, the undersigned granted Defendant's motion for summary judgment on Plaintiff's claims for breach of contract and fraud, and on February 14, 2020, granted Defendant's motion for partial summary judgment on Plaintiff's New Mexico Unfair Trade Practices claim, thereby disposing of Plaintiff's remaining claims. On April 30, 2020, the Court granted Defendant's Motion for Reconsideration **(Doc. 188)**, thereby granting summary judgment on Defendant's counterclaim for breach of contract and alternatively for unjust enrichment. The Court did not reach the merits of

---

[3] Defendant operated as the prime contractor on that project; Plaintiff was not involved in and was not a party to that project.

Defendant's other counterclaims. In accordance with Defendant's status report request, the Court will now address the remaining counterclaims.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 922 F.3d 1033, 1036 (10th Cir. 1993) (citations omitted). Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).

A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the nonmoving party. *EEOC v. Horizon/CMS Heathcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). A court is to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and thus, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court addresses Defendant's remaining counterclaims in turn.

ANALYSIS

I. **Breach of Covenant of Good Faith and Fair Dealing**

A. **Parties' Assertions**

Defendant claims that Plaintiff breached the covenant of good faith and fair dealing by withholding payment for services rendered by Defendant at Plaintiff's direction and approval. Plaintiff asserts that "there is a genuine issue of material fact as to which company actually breached the duty," and states that Defendant breached its duty by monopolizing the subcontract by using "bullying tactics" to secure 70% of the work and ignoring Plaintiff's alleged stop work order in order to maintain the appearance of a profitable company while it tried to sell itself to another company (**Doc. 113** at **11**).

**The Law Regarding Breach of Covenant of Good Faith and Fair Dealing**

The parties' contract is governed by the laws of New Mexico (**Doc. 99** Ex. G).

> "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." *Watson Truck & Supply Co., Inc. v. Males,* 111 N.M. 57, 60, 801 P.2d 639, 642 (1990) (citations omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Watson Truck & Supply Co. v. Males,* 111 N.M. at 60, 801 P.2d at 642 (internal quotation marks omitted). "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Sanders v. FedEx Ground Package Sys.,* 2008–NMSC–040, ¶ 7, 144 N.M. 449, 188 P.3d 1200 (secondary quotations omitted).

*Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1031 (D.N.M. 2013); *See also Bhasker v. Kemper Cas. Ins. Co.*, 361 F. Supp. 3d 1045, 1132–33 (D.N.M. 2019).

Here, the Court finds that Plaintiff breached the covenant of good faith and fair dealing when it continued to authorize and assign work to Defendant without remitting payment for the services. Notably, Plaintiff submitted invoices to LANS and was paid for the same work.

Additionally, Bradshaw testified that it was his intent to pay Defendant for invoiced work up to May 27th, 2017.[4] **(Doc. 99** Ex B 122: 19-123: 10; 124: 10-14**)**.

As in its prior Memorandum and Opinions and Orders **(Docs. 167** and **168)** the Court disagrees with Plaintiff's assertions that Defendant violated the Teaming Agreement by performing more than 35% of the work to the exclusion of the other subcontractors; misrepresented its involvement in the WIPP incident, which Plaintiff was not a party to; and failed to mitigate its work on the project following receipt of Bradshaw's letter. Plaintiff has not adequately presented arguments against Defendant's claim for breach of the covenant of good faith and fair dealing, advancing conclusory arguments unsupported by the record. Accordingly, Defendant's claim for breach of covenant of good faith and fair dealing is granted.

## II.     Promissory Estoppel/Detrimental Reliance

The Court further holds that Plaintiff is liable to Defendant under the theory of promissory estoppel and detrimental reliance. In New Mexico, the requisite elements of promissory estoppel are the following:

> (1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) The promisee's reliance on the promise must have been reasonable; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

*Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 20, 121 N.M. 622, 628.

Plaintiff demonstrated its intent to be bound and to pay Defendant for work when it executed the Subcontract Agreement. Throughout the course of their cooperation, Plaintiff continued to assign and authorize Defendant's work. Prior to withholding payment for the invoices subject to this action, Plaintiff consistently remitted payment to Defendant for work performed

---

[4] This date encompasses some but not all of the invoices Defendant submitted for which it was not paid.

7

under the Task Order. The Court concludes that, in light of this pattern of assignment, authorization and payment, it was reasonable for Defendant to presume it would be paid for its continued work, particularly as Plaintiff has acknowledged that it continued to authorize and assign work following Bradshaw's letter. Significantly, there is no dispute that Plaintiff subsequently submitted invoices to LANS for the same work and collected payment. The Court has already rejected Plaintiff's argument that Defendant mischaracterizes the authority and accuracy of Plaintiff's employees' testimony as conclusory and unsupported by the record. (*See* **Doc. 188** at 14-15). To permit Plaintiff to retain the proceeds of Defendant's work without recompensing Defendant for the same would work a manifest injustice. Therefore, Defendant's alternative claim under promissory estoppel is granted.

### III.     Open Account/Account Claim Stated

Lastly, Defendant posits that it must prevail on a claim for an open account/account claim stated "because [Plaintiff] ceased paying [Defendant's] invoices for authorized work performed after seven consecutive months of payment." (**Doc. 98** at 18). Plaintiff contends that the alleged stop work order presents an issue of material fact as to whether Defendant was entitled to payment and that an open account claim is inapplicable to the parties' contract because each invoice was "a separate and distinct charge for work and not a rotating account…" (**Doc. 113** at 12-13).

#### The Law Regarding an Open Account

Pursuant to NMSA 1978 § 38-7-1, "Except as provided in the Uniform Commercial Code, accounts duly verified by the oath of the party claiming the same, or his agent, and promissory notes and other instruments in writing, not barred by law, are sufficient evidence in any suit to enable the plaintiff to recover judgment for the amount thereof, unless the defendant or his agent

denies the same under oath." In *Gentry v. Gentry* (1955-NMSC-055, ¶ 8, 59 N.M. 395, 398) the Court provided:

> [An open account] may be defined as an account usually and properly kept in writing, wherein are set down by express or implied agreement of the parties concerned a connected series of debit and credit entries of reciprocal charges and allowances, and where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original, express, or implied intention, there is to be but one single and indivisible liability arising from such series of related and reciprocal debits and credits, which liability is to be fixed on the one party or the other, as the balance shall indicate at the time of settlement or following the last pertinent entry of the account.

While an open account "means, ordinarily, an account based upon running or concurrent dealings between the parties which has not been closed, settled, or stated, and in which the inclusion of further dealings between the parties is contemplated," (*Heron v. Gaylor*, 1942-NMSC-023, ¶ 6, 46 N.M. 230), the Court is not convinced that the parties' invoices fall within the parameters of such an account. Here it is unclear whether the work invoiced for represented a series of continuous transactions subject to a shifting balance or whether, as Plaintiff contends, each invoice was intended as a separate, distinct transaction within the ongoing project.

Fed. R. Civ. P. 56 (f) (1) provides that the Court may grant summary judgment for a nonmovant after giving notice and a reasonable time to respond. *See In re Brakhahn*, No. 17-13039-TA7, 2019 WL 354699, at *6 (Bankr. D.N.M. Jan. 25, 2019). For the reasons set forth above, the Court is inclined to grant summary judgment in favor of Plaintiff on Defendant's counterclaim for an open account. However, the Court will give Defendant 14 days to file a response, and then will consider whether to proceed with entry of such a summary judgment.

## CONCLUSION

For the reasons herein stated, summary judgment is entered in favor of Defendant's counterclaims on liability for Plaintiff's breach of the covenant of good faith and fair dealing and promissory estoppel/detrimental reliance. The Court defers its determination with respect to Defendant's counterclaim for an open account/account stated.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment as to Defendant's counterclaims for breach of the covenant of good faith and fair dealing and promissory estoppel/detrimental reliance **(Doc. 98)** is **GRANTED.** Defendant's Motion for Summary Judgment with respect to open account/account stated is **DEFERRED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE