IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ENVIRONMENTAL DIMENSIONS, INC.,

    Plaintiff,

v.                                                                                                       No. 1:16-cv-1056-KWR-JHR

ENERGYSOLUTIONS GOVERNMENT
GROUP, INC. (n/k/a Atkins Energy
Government Group, Inc.),

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES

**THIS MATTER** comes before the Court upon Defendant's Motion for Attorneys' Fees, filed December 23, 2020 **(Doc. 214)**. Having considered the parties' briefs and the applicable law, the Court finds that Defendant's motion is well-taken in part, and will be granted with respect to its counterclaim for attorneys' fees related to an open account/account stated, and denied with respect to fees related to "defending a 'groundless' claim under the New Mexico Unfair Practices Act" and for "for All of the Claims and Counterclaims in This Lawsuit." *Id*. **at 1, 10.**

### BACKGROUND

The claims arise from a dispute involving a nuclear waste remediation project the parties worked on together at Los Alamos National Lab ("LANL"). The facts of the case are set out in detail in several Memorandum and Opinion Orders and need not be repeated in their entirety here. *See* **Docs. 167, 168, 188, 196, 202, and 215.** Briefly, Defendant, a subcontractor of Plaintiff's, carried out work authorized by Plaintiff, after which Defendant submitted six invoices dating from

March 10 - August 11, 2015 amounting to $1,041,531.74,[1] for which it was not paid, although Plaintiff submitted invoices to Los Alamos National Security, LLC (LANS) for the same work and received payment.

**Plaintiff's Claim under the New Mexico Unfair Trade Practices Act**

Defendant's LANS Contract: Master Task Order 10

Defendant provides nuclear waste remediation and personnel support. In 2009, two years before contracting with Plaintiff, Defendant worked as prime contractor with LANS on a transuranic waste remediation project designated as Master Task Order 10. The project was completed on June 30, 2014. Plaintiff was not a party to that agreement. On February 14, 2014, an incident occurred at the Carlsbad Waste Isolation Pilot Plant facility when an improperly packaged waste drum, packaged by Defendant at LANL, underwent an exothermic reaction and burst, causing a radiological release ("WIPP incident"). The DOE Accident Investigation Board (AIB) investigated the incident and issued a report on April 15, 2015. The report pinpointed twelve contributing factors leading to the accident, including, among other things, LANS' failure to adhere to certain controls implemented by the relevant field office, LANL's failure to develop appropriate packaging and treatment procedures, and failure of LANS, Defendant, and the Los Alamos field office to ensure a strong enough safety culture. The report stated that Defendant's actions were possible contributing factors to the accident but stated that none of the contributing factors individually caused the accident.[2]

Master Task Order Agreement No. 2

---

[1] Defendant's invoices originally amounted to $1,057,354.63, however, invoice 41537, which Defendant invoiced for $281,011.44, was only approved for $265,188.55, thereby resulting in an outstanding balance of $1,041,531.74. **Doc. 206 at 5, fn 4.**

[2] The Report provides "Contributing Causes: Events or conditions that collectively with other causes increased the likelihood or severity of an accident but that individually did not cause the accident." (Doc. 111 Ex. 1 Page 4).

Unrelated to Defendant's Master Task Order 10 project, on July 12, 2011, in pursuit of qualification to bid on a LANL contract for small businesses, denominated as Master Task Order Agreement No. 2 ("MTOA2"), Plaintiff executed a Teaming Agreement with Defendant, specifying the duties and responsibilities of the parties should the bid be accepted. The Agreement included that, "[e]xcept as expressly provided … all rights and obligations of the parties under this Agreement shall terminate on the earliest of the following: … e. Execution by both parties of the subcontract contemplated by this Agreement." (Doc. 99 Ex. G).

In February 2012, Plaintiff was qualified as a potential contractor, but no work was assigned at the time. The LANS' MTOA2 agreement with Plaintiff provided that "Contractor [LANS] may, at any time, without notice to the sureties if any, by written Change Notice unilaterally direct additions, deletions or changes . . . to all or any part of the Work and Subcontractor agrees to perform such work as changed." (SOF 7).

After its successful qualification, Plaintiff subcontracted with Defendant and two other companies to carry out assigned work. Plaintiff executed the subcontract with Defendant in August 2013. On April 16, 2014, LANS awarded Plaintiff work under MTOA2 Task Order 1, with a maximum potential allocation of $23,349,876.42. LANS retained the right to modify this amount. LANS incrementally released funds for the project to Plaintiff amounting to $4,839,421.76. Work began on the project in July 2014.

Plaintiff's employees, project manager Chris Edgmon ("Edgmon") and COO/VP of business development John Rodell ("Rodell")[3] were tasked with coordinating the work. Edgmon was responsible for managing the project on a day-to-day basis by scheduling work, budgeting, and approving invoices submitted by the subcontractors, which in turn were submitted to Rodell

---

3 It is unclear what Rodell's exact title is, but the record reflects that Edgmon deferred to him and he made final decisions regarding the project on a day-to-day basis.

3

for review and approval. Bradshaw had little involvement in the day-to-day operations of the project, and most decisions were largely left to Edgmon and Rodell.

Defendant took on a larger role than the other subcontractors in performance of the work, consequently billing for a larger share than the other subcontractors. It is undisputed that Defendant only carried out work authorized by Plaintiff; that Defendant submitted six invoices dating from March 10 - August 11, 2015 amounting to $1,041,531.74, for which it was not paid; and that Plaintiff submitted invoices to LANS for the same work and received payment. On May 12, 2015, Bradshaw sent a letter of cure to Defendant stating Defendant was not in compliance with the terms of the Teaming Agreement and that "[i]n spite of repeated attempts by EDi to realign the staffing to meet the TA [Teaming Agreement] goals, Energy*Solutions* continued refusal has forced us to take action… [i]f this matter is not resolved by Friday May 15, 2015, any work [going forward] performed by Energy*Solutions* above and beyond 35% is done so solely at Energy*Solutions'* risk." (Doc. 111 Ex. 2). After Bradshaw's letter, Plaintiff continued to assign work to Defendant, which it performed until LANS terminated the underlying Task Order by letter on May 27, 2015, stating that "[t]he TRU waste program has reduced the scope and budget for SSR activities this fiscal year and for the next two fiscal years. As a result, the current and long term scope included in EDi's Task Order 275074 will be removed in full with the exception of the warehousing leasing applicable to this removed scope of work." (SOF 16).

**Plaintiff's Claim under the UPA**

Among other claims, Plaintiff argued that Defendant violated the New Mexico Unfair Trade Practices Act (UPA), alleging that through "discussions and meetings" Defendant was aware of issues with its waste packaging procedures as early as September 2011, but failed to inform Plaintiff of possible negative outcomes associated with these problems; that Plaintiff did not

disclose the extent of Defendant's involvement in the WIPP incident after executing the Teaming Agreement; that Defendant breached its duty under the Teaming Agreement in failing to keep Plaintiff apprised of the ongoing investigation; and that it concealed Defendant's potential liability for over a year before MTOA2 Task Order 1 was terminated. Plaintiff attributed LANS' choice to perform more work internally as a punitive measure in response to Defendant's alleged misconduct during the WIPP incident. Lastly, Plaintiff stated that Defendant used "heavy-handed tactics" and "overruled" Plaintiff's managerial staff to manipulate the contract to monopolize work to the exclusion of the other subcontractors.

In the relevant Orders, the Court determined that Defendant was the prevailing party, granting summary judgment in favor of Defendant on Plaintiff's claims (including Plaintiff's UPA claim) and granting summary judgment on Defendant's counterclaims relating to its entitlement to payment for the invoiced work. **Docs. 188, 196, 202, and 215.** The Court also awarded Defendant pre- and post-judgment interest on its damages. **Doc. 219.**

## DISCUSSION

Defendant seeks an award of attorneys' fees for: 1) prosecuting its counterclaim for an open account/account stated under NMSA 1978 § 39-2-2.1, (2) an award of reasonable attorneys' fees for defending a "groundless" claim under the New Mexico Unfair Practices Act (UPA) pursuant to NMSA 1978, § 57-12-10(C), and, (3) "All of the Claims and Counterclaims in This Lawsuit Because They Are Inextricably Intertwined." **Doc. 214 at 1, 10.**

### I.   Attorneys' fees under NMSA 1978 § 39-2-2.1

The Court applies state law in a diversity action with respect to attorneys' fees. *Toland v. Technicolor, Inc.*, 467 F.2d 1045, 1047 (10th Cir. 1972); *See Wolf & Klar Cos. v. Garner*, 1984-NMSC-040, ¶ 5, 101 N.M. 116, 117–18, 679 P.2d 258, 259–60 (upholding an award of attorneys' fees pursuant to NMSA 1978, § 36–2–39, recompiled as § 39-2-2.1). The parties agree that the

5

decision to grant an award of attorneys' fees to a prevailing party on its claim for an open account is left to the Court's discretion. *Audio-Visual Mktg. Corp. v. Omni Corp.*, 545 F.2d 715, 718 (10th Cir. 1976) (citing *Trujillo v. Romero*, 1971-NMSC-020, 82 N.M. 301, 481 P.2d 89).

Here, Defendant moves for attorneys' fees for its successful counterclaim for an open account/account stated under NMSA 1978 § 39-2-2.1. **Doc. 214 at 5.** The statute provides that "[i]n any civil action in the district court, small claims court or magistrate court to recover on an open account, the prevailing party may be allowed a reasonable attorney fee set by the court, and taxed and collected as costs." *Id*. " '[T]he statute is designed to prevent the threat of litigation as a tactic either to avoid paying just debts or to enforce false claims.' If the statutory purpose is to dissuade parties from litigating on open accounts except where both are convinced of the correctness of their position, *see id.,* that purpose is fostered by allowing reasonable attorney fees to the prevailing party on appeal as well as at trial." *Superior Concrete Pumping, Inc. v. David Montoya Const., Inc.*, 1989-NMSC-023, ¶ 16, 108 N.M. 401, 405, 773 P.2d 346, 350 (quoting *Cutter Flying Serv., Inc. v. Straughan Chevrolet, Inc.,* 80 N.M. 646, 649, 459 P.2d 350, 353 (1969)). Defendant asserts that an award is appropriate because Plaintiff initiated this action in an effort to avoid making payment on "just debts" to Defendant for money Plaintiff received after billing LANS for work completed by Defendant. **Doc. 214 at 5.** Plaintiff argues, without citation to the record, that it did not bring the action to avoid payment of debts, and restates its prior arguments, already repeatedly rejected by this Court (*See* **Docs. 167, 168, 188, 189, 202**), that its contract was terminated because of Defendant's involvement in the WIPP incident and its purported failure to be forthright with Plaintiff about the investigation. **Doc. 216 at 3.**

The Court notes that, as Defendant states, there is dearth of case law with respect to an award of reasonable attorneys' fees under NMSA 1978 § 39-2-2.1. The limited number of cases

the Court was able to identify have denied an award of attorneys' fees because the relevant disputes were determined to not fall within the parameters of an open account. *See Martinez v. Albuquerque Collection Services, Inc.*, 867 F. Supp. 1495, 1509–10 (D.N.M. 1994); *Hiatt v. Keil*, 1987-NMSC-049, ¶ 6, 106 N.M. 3, 4, 738 P.2d 121, 122 (determining that an award of attorneys' fees was not warranted because the relevant transaction was not on an open account); *S. Union Expl. Co. v. Wynn Expl. Co., Inc.*, 1981-NMCA-006, ¶ 54, 95 N.M. 594, 603, 624 P.2d 536, 545 (same); *Lujan v. Merhege*, 1974-NMSC-014, ¶¶ 5-6, 86 N.M. 26, 27, 519 P.2d 122, 123 (same); *Tabet Lumber Co. v. Chalamidas*, 1971-NMCA-140, ¶ 8, 83 N.M. 172, 174, 489 P.2d 885, 887 (same).

Unlike those cases, here the Court found that the parties' method of assignment of working tasks fell within the scope of an open account. **Doc. 202 at 7-84.** Moreover, there was ample evidence that Plaintiff was aware that it owed Defendant for the work, particularly because it subsequently billed and collected payment from LANS for the same work. **Docs. 167, 168, 188, 189, 202.** As previously noted, Plaintiff's Response does not cite to the record and is based upon arguments already rejected by the Court. Accordingly, at its discretion, subject to Defendant submitting appropriate briefing calculating reasonable attorneys' fees, the Court grants Defendant's motion for attorneys' fees on its claim for an open account.

## II.     Attorneys' fees under NMSA 1978, § 57-12-10 (C)

Generally, trial courts lack authority to award attorneys' fees absent contract or statutory right. *Fallen v. GREP Sw., LLC*, 247 F. Supp. 3d 1165, 1186–87 (D.N.M. 2017) (quoting Paramount Pictures Corp. v. Thompson Theaters, Inc., 621 F.2d 1088, 1091 (10th Cir. 1980)); *See Garcia v. Jeantette*, 2004-NMCA-004, ¶ 16, 134 N.M. 776, 82 P.3d 947, 951 ("[G]enerally, a party may recover attorney fees only when authorized by statute, court rule, or an agreement

---

4 The Court also noted that Plaintiff's arguments were mostly "off topic" and thus not relevant to the determination. *Id*.

expressly providing for their recovery." (citing *Monsanto v. Monsanto*, 1995-NMCA-048, ¶ 7, 119 N.M. 678, 894 P.2d at 1037)); *Craft v. Sunwest Bank of Albuquerq*ue, 84 F.Supp.2d, 1226, 1238–39 ("…New Mexico follows the American rule with respect to attorney's fees—In the absence of statutory authority to the contrary, parties pay their own attorney's fees.").

Defendant asserts that it is entitled to attorneys' fees under NMSA § 57-12-10 (C), the private remedies provisions of the UPA. In the pertinent part, the statute provides:

> The court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails. The court shall award attorney fees and costs to the party charged with an unfair or deceptive trade practice or an unconscionable trade practice if it finds that the party complaining of such trade practice brought an action that was groundless.

NMSA 1978 § 57-12-10 (C).

Defendant argues that Plaintiff initiated the action in bad faith because Plaintiff's claim under the UPA was never grounded in law or fact, specifically, that Plaintiff "disingenuously" alleged that Defendant violated the UPA and Teaming Agreement in failing to disclose and be forthcoming about the extent of its involvement in the WIPP incident . **Doc. 214 at 7.** Defendant notes that in discovery, Plaintiff's own employees expressly contradicted these allegations. *Id*. **at 8;** *See* **Doc. 317 at 6** ("In this circumstance, where [Plaintiff's] many admissions formed the basis for summary judgment, the only conclusion is that [Plaintiff] knew that it did not possess evidence to support its claims.). Plaintiff contends that Defendant has not shown that the action was brought in bad faith. Both parties cite to portions of a letter from LANS relating to the termination of the MTOA-2 project, denying that Defendant's prior participation in the WIPP incident played a role in that decision. **Doc. 214 at 9; Doc. 216 at 4.**

In *G.E.W. Mech. Contractors, Inc. v. Johnston Co.* (1993-NMCA-081, 115 N.M. 727, 858 P.2d 103), the Supreme Court of New Mexico addressed the application of the statute:

8

> In interpreting Section 57–12–10(C), however, we do not read the statute to authorize an award of attorney's fees to Defendants merely because they successfully prevailed against the claims asserted by Plaintiff. Instead, we conclude that the purpose of Section 57–12–10(C) in authorizing an award of attorney's fees to a defendant where the action is determined to have been "groundless," is to reimburse a party for the expense of defending a frivolous action and to dissuade parties from filing actions where there is no arguable basis in law or fact to support the cause of action and the claim is not supported by a good-faith argument for the extension, modification, or reversal of existing law.

*G.E.W. Mech. Contractors, Inc. v. Johnston Co.*, 1993-NMCA-081, ¶ 23, 115 N.M. 727, 733, 858 P.2d 103, 109; *See also Knight v. Snap-On Tools Corp.*, 3 F.3d 1398, 1404 (10th Cir. 1993) ("We find no evidence that the New Mexico legislature intended to create a mechanism for UTPA violators to tax a plaintiff's unsuccessful trade practices allegations against his successful ones. Snap–On can claim no attorneys' fees or costs under the UTPA.").

The New Mexico Supreme Court continued, interpreting the term "groundless" in the following context:

> In enacting Section 57–12–10(C), we believe the legislature intended the term "groundless" to have the same meaning as "frivolous," as used in SCRA 1986, 16–301 (Repl.Pamp.1991). The latter rule provides in applicable part that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." *Id.; cf. Scott v. Mego Int'l, Inc.,* 524 F.Supp. 74, 75 (D.Minn.1981) (affirming trial court's denial of award of attorney's fees in action alleging infringement of trademark and violation of Minnesota's Deceptive Trade Practices Act, where there was no showing that Plaintiff's claims were groundless, frivolous, or pursued in bad faith); *Genuine Parts Co. v. Garcia,* 92 N.M. 57, 63, 582 P.2d 1270, 1276 (1978) (construing term "frivolous" contained in former Civil Appellate Rule 20 to mean "without merit"); *Cutter Flying Serv., Inc. v. Straughan Chevrolet, Inc.,* 80 N.M. 646, 649, 459 P.2d 350, 353 (1969) (determining purpose of statute authorizing award of attorney's fees to prevailing party in suits on open account is to discourage litigation as a tactic to either avoid paying just debts or to enforce false claims); *see generally* Debra E. Wax, Annotation, *Award of Attorney's Fees in Actions Under State Deceptive Trade Practice and Consumer Protection Acts,* 35 A.L.R.4th 12, § 7 (1985).

*Id.* at ¶¶ 23-24, 115 N.M. 727, 733, 858 P.2d 103, 109.

Considering the foregoing, the Court concludes that Plaintiff's claims were not "groundless" within the meaning of the statute. Although Defendant accurately points to multiple Memorandum Opinion and Orders of the Court where it found that the evidence did not support Plaintiff's position, or instances where the Court did not find Plaintiff's arguments particularly persuasive, that does not compel the conclusion that Plaintiff's UPA claim was wholly frivolous. The Court notes that both parties cite to different portions of the LANS letter in support of their respective position. Having reviewed the letter previously, which predates Plaintiff's action, the Court concluded that it did not support Plaintiff's claim. Nevertheless, this does not mean that Plaintiff was required to take LANS' denial that Defendant's prior involvement in the WIPP incident impacted the closure of the MTOA-2 project at face value such that it can be said the instant action and claim were brought in bad faith. Accordingly, the Court denies Defendant's motion with respect to damages relating to the cost of defending Plaintiff's UPA claim.

**III.   Defendant is not entitled to attorney's fees for "all of the claims and counterclaims"**

Defendant moves for attorneys' fees for "all of the claims and counterclaims" based on the premise that New Mexico courts may permit recovery of fees in instances where "… it may be difficult or impossible to segregate the work performed on different claims because the work is 'inextricably intertwined.'" **Doc. 214 at 10** (citing *J.R. Hale Contracting Co., Inc. v. Union Pac. R.R.,* 2008-NMCA-037, ¶ 95, 143 N.M. 574, 600, 179 P.3d 579, 605). Defendant asserts that the claims here are intertwined because "[Plaintiff] exclusively relied upon two false pillars in an attempt to support all of its own claims and arguments against [Defendant's] counterclaims: (1) [Defendant's] supposed performance of unauthorized work, and (2) [Defendant's] alleged involvement in the WIPP incident." **Doc. 214 at 11.** Plaintiff contends that Defendant has made a tactical decision to separate its claims in the action in order to increase its opportunities to recoup

10

attorneys' fees and argues that there is no statutory or contractual basis for recovery of attorneys' fees for the remaining claims[5]. **Doc. 216 at 5**. Defendant replies that it originally intended to file one "comprehensive motion for summary judgment on all nine claims and counterclaims," and that it did not do so only because Plaintiff refused to concur to a request for a page enlargement from the Court. **Doc. 217 at 7**.

Here, the Court simply does not agree that the claims are so "inextricably intertwined" such that an award of attorneys' fees would be appropriate. The Court is not convinced that, to paraphrase Defendant, the fact that the Court has relied on the same or similar facts in rendering its summary judgment determinations, and that because Plaintiff has relied on "two false pillars" in support of its claims, "it would be impossible for [Defendant] to segregate the attorneys' fees attributed to its open account claim from those attributable to the prosecution of its other four counterclaims." **Doc. 214 at 15.** In fact, that is exactly what the Court expects from Defendant, and has no doubt it will be able to comply.

## IV. Conclusion

Based on the foregoing, the Court finds that Defendant is entitled only to an award of reasonable attorneys' fees on its counterclaim for an open account, subject to appropriate briefing on reasonable attorneys' fees. The Court denies Defendant's other requests for attorneys' fees.

---

[5] Plaintiff notes that there is no dispositive case law as to what "inextricably intertwined" means with respect to attorneys' fees but references the "Rooker-Feldman" doctrine in effort to define the terms. The *Rooker–Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Tal v. Hogan*, 453 F.3d 1244, 1255–56 (10th Cir. 2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 1521–22, 161 L.Ed.2d 454 (2005)). "A federal claim is inextricably intertwined with a state-court judgment if that judgment '*caused,* actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*.'" *Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006) (emphasis in original). The Court notes Plaintiff's argument but need not discuss the merits as that the Court finds that the claims and counterclaims are not so "inextricably intertwined" here for the purposes of attorneys' fees.

**THEREFORE, IT IS ORDERED** that Defendant's Motion for Attorney's Fees **(Doc. 214)** is hereby **GRANTED IN PART** as to its counterclaim for an open account and **DENIED IN PART** with respect to the cost of responding to Plaintiff's UPA claim and the costs related to the remaining "claims and counterclaims."

**IT IS FURTHER ORDERED** that Defendant's counsel is directed to supply the Court with an affidavit detailing the request for attorneys' fees within fifteen (15) days after entry of this Memorandum Opinion and Order.

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**